UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TYLER TECHNOLOGIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action |
| ) | Docket No. _____ |
| CITY OF SAN BUENAVENTURA, ) | |
| CALIFORNIA, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES the Plaintiff, Tyler Technologies, Inc., by and through its undersigned counsel, and complains against the Defendant as follows:

**PARTIES**

1. Plaintiff Tyler Technologies, Inc. ("Tyler") is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in Dallas, Texas. Tyler has a business location in Falmouth, Maine.

2. Upon information and belief, Defendant City of San Buenaventura (a/k/a Ventura), California (the "City") is a municipal corporation organized and existing under the laws of the State of California, having its principal place of business in Ventura, California.

**JURISDICTION AND VENUE**

3. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C § 1332, insofar as the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. Venue is proper in the District of Maine pursuant to 28 U.S.C § 1391(a), insofar as the Defendant is subject to personal jurisdiction in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## BACKGROUND

5. Tyler is, *inter alia*, a provider of data management, financial, billing, and other software applications to local governments, utilities, and schools across the country.

6. Prior to February 2005, MUNIS, Inc. was a Maine corporation and a wholly owned subsidiary of Tyler. MUNIS, Inc.'s principal place of business was located in Falmouth, Maine.

7. MUNIS, Inc. was merged into Tyler effective February 4, 2005. Thereafter, MUNIS became a division of Tyler. The MUNIS Division's principal office continues to be located in Falmouth, Maine.

8. In 2003, the City established a committee to review and select a replacement for the City's 20-year-old information management system.

9. In July 2003, Tyler's MUNIS Division received at its Falmouth, Maine offices a Request for Information (the "RFI") from the City regarding its software applications. Tyler responded to the RFI soon thereafter.

10. Personnel from Tyler's MUNIS Division demonstrated the functionality of several of its software application modules for the City's review committee on September 23 and 24, 2003.

11. On September 30, 2003, the City identified Tyler's product as its preferred software solution.

12. Thereafter, Tyler and the City and its representatives entered into negotiations for a contract by which Tyler would agree to provide, and the City would agree to purchase, a suite of software applications, consisting of several software application modules. The negotiations continued for several months by telephone, fax, email, and the U.S. mail. During the negotiations, the Tyler performed no fewer than five additional demonstrations of the functionality of its products to the City's independent consultant and information technology staffs.

13. The negotiations culminated in a System Agreement dated June 28, 2004 (the "Agreement"). A true copy of the Agreement is attached hereto as Exhibit A. The Agreement was signed by the City Manager and the City Attorney in California, and signed by MUNIS' President, John S. Marr, Jr., in Maine.

14. Under the Agreement, Tyler agreed to sell and the City agreed to purchase a suite of software applications, training, and maintenance and support services. The contract price was $994,328.00, together with an annual maintenance and support fee of $203,586.00.

15. Implementation began on August 1, 2004.

16. Tyler's implementation of the system was consistently hindered by the City's actions, including, but not limited to altering the order of implementation; post-Agreement requests for new and additional product functionality; failure to come to internal agreement as to the structure of a Chart of Accounts, which is required for basic functionality; and the failure of City personnel to prepare adequately for training sessions.

17. Notwithstanding the erection by the City of a series of obstacles, Tyler consistently endeavored to execute a successful implementation as required by the Agreement. Among other things, Tyler: (1) provided requested program modifications, many at no

1128883.1

additional charge to the City, to meet the City's ever-changing needs; and (2) sent personnel to California on multiple occasions, at no cost to the City, for extensive requirement reviews and to demonstrate system functionality.

18. On November 19-21, 2003, five representatives from the City, including the City's Project Manager and Network Administrator, visited Tyler's facilities in Maine and Massachusetts. During the trip, the City's representatives visited the MUNIS Division's Falmouth, Maine headquarters and met with several department managers.

19. All technical and product support to which the City was entitled under the Agreement was provided by Tyler's MUNIS Division in Falmouth, Maine. Upon information and belief, personnel from the City have called Tyler's support staff in Maine well in excess of 100 times.

20. Moreover, between July 2004 and October 2005, the City's personnel in California and Tyler representatives in Maine held routine conference calls to discuss project management issues.

21. In or around August 2005, the contract of the City's independent consultant, who served as the MUNIS Project Manager expired. Around the same time the City's Information Technology Manager left the City's employ.

22. Thereafter, on October 14, 2005, the City's Interim Information Technology Manager informed Tyler that the "entire project is on hold."

23. On January 9, 2006, the Ventura City Council voted to unilaterally terminate the Agreement, preferring to return to the use of the City's old system rather than going through the growing pains of implementing a new system. Tyler was notified of the City Council's vote by letter dated January 11, 2006.

24. The Agreement provides in pertinent part:

In the event of cancellation or termination of the Software License Agreement, client will make payment to MUNIS for all software products, services, and expenses delivered or incurred prior to the termination or cancellation of the Software License Agreement.

25. Prior to the City's unilateral termination of the Agreement, Tyler had received payments from the City totaling $872,130.87. The City remitted those payments to Tyler's MUNIS Division in Falmouth, Maine.

26. At the time of the City's termination, Tyler had outstanding invoices to the City in the aggregate amount of $342,558.33 for products and services provided pursuant to the Agreement. At no point did the City ever dispute any of the outstanding invoices within 30 days after receipt as was its prerogative under the terms of the Agreement.

27. Despite demands that it do so, the City has not paid any of the outstanding invoices.

## CLAIM FOR BREACH OF CONTRACT

28. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 27 above as if fully set forth herein.

29. Under the terms of the Agreement, Tyler agreed to provide the City with hardware, software applications, training, and maintenance and support in exchange for the City's agreement to pay Tyler for its provision of such hardware, software applications, training, and maintenance and support.

30. Tyler has fully performed all of its obligations under the Agreement.

31. The City, however, has breached the Agreement by failing to pay for all of the products and services provided by Tyler as required by the Agreement.

32.	Tyler has been damaged by reason of the City's breach insofar as Tyler has been deprived of the benefit of its bargain.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court award it the following relief:

a.	Compensatory, incidental, and consequential damages arising from the Defendant's breach of contract;

b.	Costs and prejudgment interest; and

c.	Any and all further relief this Court deems to be just and proper.

## JURY TRIAL DEMAND

Pursuant to Fed.R.Civ.P. 38(b) and Local Rule 38, Plaintiff demands a trial by jury on all issues in this matter so triable.

Dated:  May 26, 2006

                                    Respectfully submitted,

                                    /s/ Roy T. Pierce
                                    Jonathan S. Piper
                                    Roy T. Pierce
                                    Attorneys for Plaintiff
                                    Tyler Technologies, Inc.

PRETI, FLAHERTY, BELIVEAU & PACHIOS, LLP
One City Center
P.O. Box 9546
Portland, ME  04112-9546
(207) 791-3000

1128883.1